# Exhibit A



**CT Corporation**
**Service of Process Notification**
06/09/2022
CT Log Number 541716168

## Service of Process Transmittal Summary

**TO:**   Amanda Rupert
Tyson Foods, Inc.
2200 W DON TYSON PKWY # 131
SPRINGDALE, AR 72762-6901

**RE:**   **Process Served in Delaware**

**FOR:**   Tyson Foods, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: FRANKIE COLLINS, an individual // To: Tyson Foods, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | 40th Judicial Circuit Court - Clinton County, KY<br>Case # 22CI00056 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 06/09/2022 postmarked on 06/07/2022 |
| **JURISDICTION SERVED:** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days following the day of delivery |
| **ATTORNEY(S)/SENDER(S):** | Taylor J. Ferguson<br>BIESECKER DUTKANYCH & MACER, LLC<br>144 N. Delaware St.<br>Indianapolis, IN 46204<br>317-991-4765 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/09/2022, Expected Purge Date: 06/14/2022 |
| | Image SOP |
| | Email Notification,  Jane Duke  jane.duke@tyson.com |
| | Email Notification,  Amanda Rupert  amanda.rupert@tyson.com |
| | Email Notification,  Adam Deckinger  adam.deckinger@tyson.com |
| | Email Notification,  Brittany Pettingill  brittany.pettingill@tyson.com |
| | Email Notification,  Leigh Anne Yeargan  leighanne.yeargan@tyson.com |
| | Email Notification,  Eric Stansell  eric.stansell@tyson.com |
| | Email Notification,  Jason Dembinski  jason.dembinski@tyson.com |
| | Email Notification,  Teresa Boyd  teresa.boyd@tyson.com |
| | Email Notification,  Paulette Smith  paulette.smith@tyson.com |

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **22-CI-00056**<br>Court: **CIRCUIT**<br>County: **CLINTON** |

*Plantiff,* **COLLINS, FRANKIE VS. TYSON FOODS**, *Defendant*

TO: **CT CORPORATION SYSTEM**
  **306 W MAIN ST, SUITE 512**
  **FRANKFORT, KY 40601**

Memo: Related party is TYSON FOODS

The Commonwealth of Kentucky to Defendant:
**TYSON FOODS**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Jike States*

Clinton Circuit Clerk
Date: **6/3/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

  Date: _____, 20_____

  _____
  Served By

  _____
  Title

---

Summons ID: 468220331898909@00000033132
CIRCUIT: 22-CI-00056 Certified Mail
COLLINS, FRANKIE VS. TYSON FOODS



*eFiled*



No. _____                    CLINTON COUNTY CIRCUIT COURT
                                         JUDGE _____

FRANKIE COLLINS, an individual                                    PLAINTIFF

         v.        **COMPLAINT AND PRAYER FOR JURY TRIAL**

TYSON FOODS, INC.                                                DEFENDANT

                              **INTRODUCTION**

1.      Article I, Section 2 of the Tennessee Constitution states: "That government being
        instituted for the common benefit, the doctrine of nonresistance against arbitrary power
        and oppression is absurd, slavish, and destructive of the good and happiness of mankind."

2.      Section 5 of the Kentucky Constitution states: "the civil rights, privileges or
        capacities of no person shall be taken away, or in anywise diminished or enlarged, on
        account of his belief or disbelief of any religious tenet, dogma or teaching." Furthermore,
        "[n]o human authority shall, in any case whatever, control or interfere with the rights of
        conscience." *Id.*

3.      Both Federal and Kentucky state law have been created to mirror these civil rights
        in many settings, including employment, to safeguard the liberties of citizens.

4.      Tyson Foods, Inc. ("Tyson") has elected to woefully violate these safeguards, at
        the expense of their loyal employees, with no possible justification for doing so.

5.      Plaintiff Frankie D. Collins ("Plaintiff") seeks relief from Defendant Tyson's
        pattern of discrimination against employees who request religious accommodations from
        Tyson's COVID-19 vaccination policy.

6.      Tyson's policy seeks to prevent a very remote risk, the at-employment risk of
        asymptomatic spread of COVID-19 to fellow employees, by a method (vaccination) that
        actually increases the risk of deadly spread of COVID-19.



7.      Tyson's unlawful actions left Plaintiff with the impossible choice of suffering a physical assault and uninvited invasion of his body by receiving an experimental COVID-19 vaccine, at the expense of his religious beliefs, bodily autonomy, medical privacy, and at risk to his health, or losing his livelihood and being unable to provide support for himself and his family.

8.      This Faustian bargain is no bargain at all and is precisely what is forbidden by federal and Kentucky law.

9.      The Plaintiff seeks this court to order that Tyson comply with the laws protecting the rights of Kentucky citizens against precisely such Catch-22 "choices" and hold Tyson accountable for its discriminatory treatment.

## PARTIES

10.      Plaintiff Frankie Collins ("Collins") was employed as a lead day shift mechanic at Tyson's plant in Albany, Kentucky. ("Albany plant"). Plaintiff requested an exemption from the mandatory vaccination on religious grounds, which was approved, and he was placed on an unelected, unpaid, and unprotected leave of absence. He is a citizen of Kentucky.

11.      Defendant Tyson Foods, Inc. ("Tyson"), together with its subsidiaries, is a corporation that operates as a worldwide food processing and marketing company.

12.      Tyson is the world's largest processor and marketer of chicken, beef, and pork.

13.      Tyson employs approximately 139,000 people in the United States and operates three facilities in the state of Kentucky. A key plant at issue in this case is the Albany location, which employees 3,500 people.

14.     At all relevant times, Tyson knew or should have known the laws, policies,

practices, and conditions alleged herein.

### JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to Ky. Rev.

Stat. § 23A.010.

16.     This Court has personal jurisdiction over Defendant Tyson pursuant to Ky. Rev.

Stat. § 454.210 because Tyson transacts business in Kentucky, and the wrongful conduct

and resulting injuries alleged herein substantially occurred in this state.

17.     Venue is proper in this judicial district pursuant to Ky. Rev. Stat. § 23A.010

because the cause of action arises primarily from Tyson's Albany plant situated in

Clinton County.

### FACTS AND BACKGROUND

**Coronavirus and Tyson's Response**

18.     In the spring of 2020, Tyson began implementing mitigation procedures for its

workforce, including several of the following requirements for its employees: masks, face

shields, social distancing, temperature checks, COVID-19 testing,[1] and self-quarantines.[2]

Tyson initially made several accommodations for hourly employees.[3] For example, in

---

[1] Tyson Foods, Tyson Foods CEO Provides Update on Efforts to Address COVID-19(April 6, 2021) available at https://www.tysonfoods.com/news/news-releases/2020/4/tyson-foods-ceo-provides-update-efforts-address-covid-19 (last visited Sept. 27, 2021); Tyson Foods, Why Tyson Has Taken a Leading Position on COVID-19 Testing (July 1, 2021) available at https://thefeed.blog/2020/07/01/covid-19-testing-at-tyson-foods/ (Last visited Sept. 27, 2021).
[2] Tyson Foods, Protecting Team Members and Our Company; Ensuring Business Continuity (March 17, 2020) available at https://www.tysonfoods.com/news/news-releases/2020/3/protecting-team-members-and-our-company-ensuring-business-continuity (last visited Sept. 27, 2021); Chattin Cato, Tyson Team Innovates to Make Face Shields for Frontline Workers (July 6, 2021) available at https://thefeed.blog/2020/07/06/tyson-innovates-to-make-face-shields-for-frontline-workers/ (last visited Sept. 27, 2021).
[3] *Ibid.*



March of 2020, the company relaxed attendance policies in its plants by "[]eliminating any punitive effect for missing work due to illness."[4]

19.     Tyson experienced substantial success reducing the risk of COVID-19 spread through self-quarantining for the symptomatic and testing for the asymptomatic persons. As even Anthony Fauci admits, the risk of asymptomatic spread is very rare and very low, with experts estimating it is largely a non-existent risk. At worst, asymptomatic risk of employees spreading lethal COVID-19 is less than one-in-a-million. Even in that one-in-a-million risk, testing easily addresses asymptomatic risk without requiring bodily invasion against a person's will of an experimental drug with unknown long-term side effects due to its novel mRNA methodology, with the worst short-term adverse events reported in the government's VAERS database in American history, and whose administration offends the conscience of millions of Americans' deeply held spiritual beliefs and religious faith due to the use of aborted fetal cells in its testing, development and production of each of these experimental vaccines.

20.     The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020. One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

21.     Though the FDA has approved the use of a currently unavailable vaccine for future use, the only vaccines available for use in the United States are these three experimental, investigative and unlicensed drugs, all of which were either developed,

---

[4] *Ibid.*

tested, or produced with the use of fetal cells from aborted fetuses. Pfizer's FDA-approved Comirnaty vaccine "are not currently being produced" nor available to the public.[5]

**Tyson's Unlawful Vaccine Mandate**

22.     We face an unparalleled moment in history, when employers are mandating an experimental vaccine that utilizes novel technology and, not only has conferred little to no benefit to recipients but has injured tens of thousands of individuals who elected or were forced to receive the vaccine by virtue of vaccination mandates exactly like Tyson's.

23.     On approximately August 3, 2021, Tyson publicly announced it would require all "[]team members at U.S. office locations to be fully vaccinated by October 1, 2021."[6] Tyson also announced that all other team members would be required to be vaccinated by November 1, 2021.

24.     In announcing the mandate, Tyson CEO Donnie King justified the decision by claiming, "[]the U.S. Centers for Disease Control and Prevention is reporting *nearly all hospitalizations and deaths* in the U.S. are among those who are unvaccinated" (emphasis added).[7] As set forth herein below, Mr. King's statement was false.

---

[5] CDC, COVID-19 Vaccine Codes, available at http://www.cdc.gov/vaccines/programs/iis/COVID-19-related-codes.html (last visited June 2, 2022).

[6] Tyson Foods, *Tyson Foods to Require COVID-19 Vaccination for its U.S. Workforce* (Aug. 3, 2021) available at https://www.tysonfoods.com/news/news-releases/2021/8/tyson-foods-require-covid-19-vaccinations-its-us-workforce (last visited Sept. 27, 2021).

[7] Donnie King, *Our Next Step in the Fight Against the Pandemic* (Aug. 3, 2021) available at https://web.archive.org/web/20210803143911/https://thefeed.blog/2021/08/03/our-next-step-in-the-fight-against-the-pandemic/ (last visited Sept. 27, 2021).



25.     Tyson publicly stated that "Exceptions to the vaccination mandate will involve workers who seek medical or religious accommodation."

26.     For those employees whose religious or medical exemptions were granted, Tyson placed them on an unelected, unpaid, and unprotected leave of absence (referred to as Leave of Absence + or LOA+). Under this policy, employees were not officially terminated, but were denied access to work and received no compensation or benefits.

27.     Employees placed on LOA+ were given one year during which time if they got vaccinated, they could potentially return to work but their original position was not guaranteed. At the end of the year, if they remained unvaccinated, they were terminated.

28.     Tyson has previously attested that it was acting as a federal officer at the behest of the federal government in its implementation of its vaccination mandate.[8] Tyson is thus subject to the federal laws and limitations applicable as a government actor.

**Tyson's Vaccine Mandate Will Not Stop the Spread of COVID-19**

29.     The real-world experience of mRNA vaccines continues to undermine claims of efficacy. The efficacy of all three available vaccines has been drastically waning and is a far cry from what was originally promised.

30.     Studies from the past 18 months demonstrate conclusively that COVID-19 vaccines provide little to no benefit and do not reduce transmission or infection. At best, COVID-19 vaccines may reduce the risk of severe symptoms and hospitalization.

31.     It has been observed that communities with a higher rate of vaccination have higher rates of infection and transmission.

---

[8] *Reed v. Tyson Foods, Inc.,* Case No. 1:21-cv-01155-STA-jay, Notice of Removal (October 15, 2021).

32.    Studies have also shown that natural immunity, which derives from organically being infected with and recovering from SARS-CoV-2, confers stronger, more robust, and longer-lasting protection than vaccination-induced immunity, without incurring any of the risks of vaccination.

**Vaccination Poses Substantial Health Risks**

33.    More than a year after the COVID-19 biologics have been introduced to the American public *en masse,* the reports of adverse events and death from the injections are staggering and far exceed that which has been seen from any vaccine in human history.

34.    Data released on May 20, 2022 by the Centers for Disease Control and Prevention (CDC) showed that since December 14, 2020, a total of 1,322,709 adverse events following vaccination were reported to the Vaccine Adverse Event Reporting System (VAERS), with 30,942 deaths reported.[9]

35.    This data is likely a staggering underestimation, as past attempts to investigate VAERS reporting rate have suggested that between 1 percent and 13 percent of actual adverse effects get reported; however, because CDC changed VAERS reporting recently to include additional data, it is not possible to estimate the degree of underreporting based on past attempts to do so.[10] The CDC has failed to account for this underreporting.

36.    The input of event reports to VAERS since the COVID vaccines were rolled out is *greater than all cumulative adverse event reports to VAERS for the prior 30 years*: an alarming statistic.

---

[9] Vaccine Adverse Event Reporting System (VAERS), CDC Wonder, available at https://wonder.cdc.gov/controller/datarequest/D8;jsessionid=DA4BD564C41F4D061172AC48FE4C.

[10] Varricchio F, Iskander J, Destefano F, Ball R, Pless R, Braun MM, Chen RT. Understanding vaccine safety information from the Vaccine Adverse Event Reporting System. Pediatr Infect Dis J. 2004 Apr;23(4):287-94. doi: 10.1097/00006454-200404000-00002. PMID: 15071280.

37.     There has been a myriad of short-term vaccine side effects that have been witnessed and reported since the rollout of the vaccines, including myocarditis, pericarditis, Guillain-Barre syndrome, blood clots, reproductive health issues, and more.[11]

38.     Side effects of the Janssen COVID-19 vaccine were so severe that its use was severely limited by the FDA.[12]

39.     We now know that vaccine-induced spike proteins, the putative antigen induced by Pfizer-BioNTech COVID vaccine, are a toxin. They are produced and enter the circulatory system, have predictable negative consequences to vascular endothelium, activate platelets, and cross the blood-brain barrier. Spike proteins circulate throughout the body and accumulate in large concentrations in organs and tissues, including the spleen, bone marrow, liver, adrenal glands, and especially the ovaries.[13] Since there exists no way to turn off spike production, the actual dose of spike protein may vary by orders of magnitude from person to person.

40.     Studies have also shown that antibody-dependent enhancement ("ADE") poses a severe threat to vaccinated individuals.[14] "ADE occurs when the antibodies generated during an immune response recognize and bind to a pathogen, but they are unable to

---

[11] Association of Cerebral Venous Thrombosis with mRNA COVID-19 Vaccines: A Disproportionality Analysis of the World Health Organization Pharmacovigilance Database, *Vaccines,* 2022, http://doi.org/10.3390/vaccines10050799;

[12] Coronavirus (COVID-19) Update: FDA Limits Use of Janssen COVID-19 Vaccine to Certain Individuals, *FDA,* available at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-limits-use-janssen-covid-19-vaccine-certain-individuals.

[13] SARS-CoV-2 mRNA Vaccine Biodistribution Study, https://www.docdroid.net/xq0Z8B0/pfizer-report-japanese-government-pdf.

[14] Infection-enhancing anti-SARS-CoV-2 antibodies recognize both the original Wuhan/D614G strain and Delta variants. A potential risk for mass vaccination? Yahi, Nouara et al.Journal of Infection, Volume 83, Issue 5, 607 - 635, doi: https://doi.org/10.1016/j.jinf.2021.08.010.

provide infection. Instead, these antibodies act as a 'Trojan horse,' allowing the pathogen to get into cells and exacerbate the immune response."[15] Thus, when dealing with different strains of COVID-19, ADE caused by the COVID-19 biologic may accelerate the virus infecting the cells and resulting in more severe illness.

**Tyson's Discriminatory Treatment of Plaintiff**

41.    Frank Collins ("Collins") was employed as lead day shift mechanic at Tyson's plant in Albany, Kentucky.

42.    Upon Tyson's implementation of its company-wide vaccination policy, Plaintiff was subject to the November 1, 2021, deadline to be fully vaccinated.

43.    Plaintiff filed a religious exemption on August 17, 2021 with Human Resources as well as provided a letter explaining his concerns with the vaccine. *Exhibits 2 & 3.*

44.    Tyson Foods granted Plaintiff's religious exemption, but Tyson's only available accommodation for employees whose exemptions were granted was placement on an unpaid, unelected, and unprotected leave of absence.

45.    On November 1, 2021, Plaintiff was placed on unpaid leave and told that he had one year to get vaccinated. If he remained unvaccinated at the end of the year, he would be officially terminated.

46.    Tyson's action caused severe financial hardship for Plaintiff. Plaintiff had brain surgery shortly before the outbreak of COVID-19. Since being placed on unpaid leave, he has since struggled to support his family of three children and his disabled father-in-law whom he supports.

---

[15] Antibody-dependent Enhancement and Vaccines, Children's Hospital of Philadelphia, available at https://www.chop.edu/centers-programs/vaccine-education-center/vaccine-safety/antibody-dependent-enhancement-and-vaccines.



47.     Because of the nature of Tyson's discriminatory action and the fact that Plaintiff has not actually been terminated from his position, Plaintiff has been unable to access his 401k.

48.     Given that there is no other comparable industry in Albany, Kentucky, Plaintiff has been unable to find similar full-time employment.

49.     Collins was a dedicated employee who consistently worked 12-hour shifts, including on holidays.

50.     Tyson has made allowances for other employees who refused to comply with the vaccination requirement but has not provided such accommodations to Plaintiff.

51.     Plaintiff filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and was granted a Right to Sue Letter on March 7, 2022. *Exhibit 1*. This suit has followed.

**COVID Vaccines Violate Plaintiff's Religious Beliefs**

52.     Plaintiff holds sincere concerns surrounding the process used to manufacture the vaccines.

53.     Presently, all COVID-19 vaccines have made use either in production or testing of fetal cell lines developed from tissues derived from aborted fetuses (see excerpt

below).[16]



**Los Angeles County**
**COVID-19 VACCINE AND FETAL CELL LINES**

In various stages of vaccine development and manufacturing, some of the COVID-19 vaccines used cells originally isolated from fetal tissue (often referred to as fetal cells), some of which were originally derived from an aborted fetus. The use of fetal cell lines is a very sensitive and important topic within some faith communities and among individuals with concerns about the ethics of using materials derived in this way.

54.     For example, the Johnson & Johnson vaccines used fetal cell cultures, specifically

PER.C6, a retinal cell line that was isolated from a terminated fetus in 1985.[17]

55.     In an interview with WREG, Dr. Steve Threlkeld, president of the medical staff at

Baptist Hospital in Memphis, Tennessee, acknowledged fetal cell lines used to produce or

test the Johnson & Johnson COVID-19 vaccines "were actually recovered from an

aborted fetus in the 70s or 80s and there are several of these cell lines."[18]

56.     As for the EUA-Pfizer and Moderna COVID-19 vaccines, fetal cell line HEK 293

was used during the research and development phase.[19] All HEK 293 cells are descended

---

[16] *See,* Los Angeles County Public Health, *COVID-19 Vaccine and Fetal Cell Lines,* http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf (last accessed August 26, 2021)

[17] Are the vaccines made with fetal cells, Institute for Clinical Systems Improvement, https://www.icsi.org/covid-19-vaccine-faq/are-the-mrna-vaccines-made-with-fetal-cells/ (last accessed August 26, 2021), see also, Tennessee Department of Health, Fact v. Fiction: Johnson & Johnson Vaccine(2021) available at https://covid19.tn.gov/stay-informed/blogs/fact-v-fiction-johnson-johnson-vaccine/ (last visited Sept. 27, 2021) (acknowledging the Johnson & Johnson vaccine was developed from a fetal cell line).

[18] WREG, *State: Fetal cell lines, not fetal tissue, were used to make Johnson & Johnson vaccine* (March 5, 2021) available at https://www.wreg.com/news/state-fetal-cell-lines-not-fetal-tissue-was-used-to-make-johnson-johnson-vaccine/ (last visited Sept. 27, 2021).

[19] *See,* Nebraska Medicine, *You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?,* https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, (last visited on Aug. 26, 2021).



from tissue taken in 1973 from either an elective abortion or miscarriage[20] that took place in the Netherlands.[21]

57.    While the production of the vaccines did not reportedly require any new abortions, Plaintiff objects to receiving the COVID-19 vaccines on the basis that, even assuming the vaccines do confer a meaningful health benefit, that benefit is one from ill-gotten gains.

58.    Plaintiff believes any benefit the COVID-19 vaccines may confer flows from the unjust exploitation of unborn human life. On this basis alone, Plaintiff refused on religious grounds to accept or be forced to accept the COVID-19 vaccines.

**FIRST CAUSE OF ACTION**
**Religious Discrimination**
**[Violation of the Kentucky Civil Rights Act]**

59.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60.    Under the Kentucky Civil Rights Act, it is unlawful for an employer to "fail or refuse to hire, or to discharge any individuals, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, *religion*, national origin, sex, age forty (40) and dover, because the person is a qualified individual with a disability…" KRS 344.040(1)(a) (emphasis added).

---

[20] *COVID-19 Vaccine and Fetal Cell Lines.*
[21] *Ibid.*

61.     KRS 344.040(1)(b) also prohibits employers from "limit[ing], segregat[ing] or classify[ing] employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee, because of the individual's . . . religion."

62.     Employers are required to make reasonable accommodations to the religious needs of employees so long as they can be made without undue hardship. *Irvin v. Aubrey*, 92 S.W.3d 87, 89 (Ky. Ct. App. 2001). The hardship to an employer must exceed a *de minimum* cost. *Id.*

63.     Plaintiff holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine. While there may be some who consider COVID-19 vaccines to be acceptable, no employer in Kentucky, public or private, is permitted to decide for itself whose religious beliefs are valid, and whose are not.

64.     Once an employee has articulated his or her sincerely held religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the proper inquiry is thus at its end as to that element.

65.     Defendant's COVID-19 vaccine mandate, which threatens termination for non-compliant employees, discriminates against employees who do not wish to receive the vaccine on religious grounds.

66.     Plaintiff sought an exemption from Tyson's COVID-19 vaccine mandate based on his sincere religious beliefs.

67.     Tyson was made fully aware of the conflict between its COVID-19 vaccine mandate and Plaintiff's religious beliefs. Tyson responded with disciplinary action by



discharge poorly disguised as an accommodation. Plaintiff was left without any compensation nor benefits.

68.      As such, Tyson has failed to provide *any* reasonable accommodation, but has rather implemented a punitive measure against employees who choose to exercise their religious rights.

69.      As a result of Tyson's draconian mandate, Plaintiff, and other similarly situated employees, were forced to seek alternative employment during his leave of absence.

70.      Plaintiff's position, should he decide to get vaccination, would not be guaranteed upon his return.

71.      Tyson's failure to provide reasonable accommodations to Plaintiff's sincere religious beliefs has injured and will continue to injure Plaintiff by discriminatorily denying his income and by terminating his livelihood.

72.      Tyson cannot show that affording Plaintiff other accommodations (scheduled testing, masking, etc.), many of which Tyson has been implementing since March 2020, would impose an undue hardship in the context of employer vaccination policies.

73.      Tyson has thus failed to consider any reasonable accommodations to Plaintiff.[22] Rather, Tyson has implemented a consequence that is tantamount to termination and a far cry from the "individualized" assessment required by the EEOC.[23]

---

[22] See EEOC Guidance for employers whose employees are unable to be vaccinated due to their sincerely held religious beliefs. What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (the "COVID-19 Technical Assistance", https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technicalassistance, last visited on September 26,2021.

[23] *See supra,* at section J, ¶¶ 103-110.

74.     As such, Tyson discriminated against Plaintiff based on his sincerely held religious beliefs, failed to provide a reasonable accommodation to Plaintiff's religious exemption request, and therefore, violated the Kentucky Civil Rights Act.

## SECOND CAUSE OF ACTION
### Disability Discrimination
### [Violation of the Kentucky Civil Rights Act]

75.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

76.     The Kentucky Civil Rights Act also prohibits employers from discriminating against an employee on the basis of a disability.

77.     Plaintiff is a "qualified individual with a disability," which is defined under KRS 344.030 as "an individual with a disability as defined in KRS 344.010 who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business."

78.     The definition of "Disability" as defined in KRS § 344.010 includes individuals that are "regarded as having an impairment" that substantially limits a major life activity of the individual.

79.     Defendant is an "employer" as that term is defined by KRS 344.030(2).

80.     Plaintiff is an "employee" as that term is defined by KRS 344.010(5).

81.     Defendant regarded Plaintiff as being disabled and discriminated against him on as such when Defendant mandated the COVID-19 vaccine under penalty of effective termination.

82.     Tyson's vaccine mandate discriminates against Plaintiff because it treats him as though he is medically disabled. This is based upon Tyson's erroneous belief that Plaintiff lacks immunity to COVID-19. Yet, the medical evidence set forth herein demonstrates that immunity gained from previous COVID-19 infection is equal to or superior to the protection offered by vaccination. Therefore, Tyson engages in unlawful discrimination in violation of the Kentucky Civil Rights Act, because Tyson regards Plaintiff as having a physical impairment that disqualifies him from doing their job, and who can only be allowed in the workplace if he takes the COVID-19 vaccine.

83.     Tyson provides no reasonable accommodation that would allow Plaintiff to continue performing his position, as he had been successfully doing since the initial outbreak of COVID-19, other than one that is tantamount to termination of employment.

84.     Because of Plaintiff's perceived disability and Tyson's company policy, Plaintiff has suffered an adverse employment action because of that disability.

85.     Tyson's COVID-19 vaccine mandate has harmed and continues to harm Plaintiff. Such injury includes, but is not limited to, coercing Plaintiff to take an untested and potentially unsafe substance, threatening employment, and threatening the income and livelihood of non-compliant employees on the basis of a perceived disability.

### THIRD CAUSE OF ACTION
**Religious Discrimination**
**[Violation of the Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq]**

86.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

87.     Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

88.     Plaintiff holds sincere religious beliefs that precludes him from receiving a COVID-19 vaccine. Plaintiff requested and was granted a religious exemption from Tyson's COVID-19 vaccine mandate.

89.     Tyson Foods failed to provide Plaintiff with reasonable accommodations for their religious observances as is required under Title VII, as one year of unpaid leave is not reasonable accommodation, but rather a punitive measure taken against employees who choose to exercise their religious rights.

90.     By denying reasonable accommodation and executing punitive measures against employees who refrain from obtaining a COVID-19 vaccine on religious grounds, Tyson Foods discriminated against Plaintiff due to their religious beliefs.

91.     Tyson Foods' failure to provide religious accommodations has injured and will continue to injure Plaintiff by discriminatorily denying him employment and income.

92.     On these facts, Plaintiff establishes a prima facie case that shows Tyson's failed to make any reasonable accommodation and violated Plaintiff's Title VII rights.

93.     Because Plaintiff will be able to establish a *prima facie* showing, the burden will shift to Tyson to show that it could not accommodate the plaintiff's religious needs without undue hardship. Tyson is unable to make this showing for several reasons.

94.     First, upon receiving Plaintiff's request for a religious accommodation, Tyson did not give that request the individualized consideration demanded by Title VII. In the EEOC's recent Technical Assistance, What You Should Know About COVID-19 and the



ADA, the Rehabilitation Act, and Other EEO Laws (the "COVID-19 Technical Assistance", the EEOC addressed this precise issue.[24] In the COVID-19 Technical Assistance, the EEOC posed the following question: "Under Title VII, how should an employer respond to an employee who communicates that he . . . is unable to be vaccinated . . . because of a sincerely held religious belief."[25] The EEOC's response was as follows:

> Once an employer is on notice that an employee's sincerely held religious belief, practice, or observance prevents the employee from getting the COVID-19 vaccine, the employer must provide a reasonable accommodation unless it would pose an undue hardship . . . . Under Title VII, an employer should thoroughly consider all possible reasonable accommodations . . . . In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances.[26]

Elsewhere in that document, the EEOC identified the types of reasonable accommodations employers must consider when they receive requests for religious accommodations, including "masks," "testing," "telework," "social distancing protocols," "making changes in the work environment (such as [modification] to ventilation systems or limiting contact with other employees and non-employees," and "regular hand washing."[27]

95.     Here, Tyson failed to "thoroughly consider all possible reasonable accommodations," as required by the EEOC and provided a far cry from the "individualized" assessment required by the EEOC.[28]

---

[24] *See* https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technicalassistance, last visited on September 26, 2021.
[25] *Id.* at K.12.
[26] *Id.* (emphasis added).
[27] *Id.* at K.5.
[28] *Id.*

96.     Second, Tyson cannot show that affording Plaintiff the types accommodations the

EEOC identified in the COVID-19 Technical Assistance as being reasonable in the

context of employer vaccination policies—i.e., "masks," "testing," "telework," "social

distancing protocols," "making changes in the work environment," "hand washing,"

etc.—would impose an undue hardship on it.

97.     As such, Tyson has violated Plaintiff's rights under Title VII by discriminating

against him on the basis of religion and failing to provide reasonable accommodations or

demonstrate undue hardship.

## FOURTH CAUSE OF ACTION
### Disability Discrimination
**[Violation of the Americans with Disabilities Act; <u>42 U.S.C. § 12010</u> et seq.]**

98.     Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs as if fully set forth herein.

99.     The Americans with Disabilities Act of 1990 ("ADA"), set forth in 42 U.S.C. §§

12010 et seq. (hereinafter the "ADA") prohibits, among other things, discriminating

against disabled persons' full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations by any person who owns, leases, leases to, or

operates a place of public accommodation.

100.     Under the ADA, an individual has a protected disability if he or she either

has a "physical or mental impairment that substantially limits one or more major life

activities ..." (ADA Act, § 12102(1)(A)), or is: "being regarded as having such an

impairment []." (Id., at subparagraph (C)).

101.     "An employer who fails to make 'reasonable accommodations to the

known physical or mental limitations of an [employee] with a disability' discriminates



'unless' the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.' " *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002)(quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added).

102.        Tyson regarded unvaccinated individuals as being "disabled" and unable to perform their duties of their employment. Based on this perceived disability, Defendant discriminated against employees, including Plaintiff that sought exemptions by threatening termination if they failed to receive the COVID-19 vaccine. However, Tyson is treating Plaintiff as unfit for the positions that he has successfully been performing since before COVID-19 became a problem.

103.        Defendant failed to engage in an individualized, interactive process with Plaintiff to determine whether a reasonable accommodation is possible and cannot demonstrate that providing alternative accommodations would impose an undue hardship.

### FIFTH CAUSE OF ACTION
**[Violation of the Fourth & Fifth Amendments to the United States Constitution -
Privacy, Bodily Integrity, and Medical Freedom]**

104.        Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

105.        As Defendant Tyson has already, all of Tyson's actions relevant to this proceeding, including their adverse employment actions, is as a federal officer, and as such, subjects them to liability as a federal officer. If Tyson is a federal officer, then it is obligated to follow Constitutional limits on their action.

106.        Defendant's vaccine mandate violates the liberties protected by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, which includes the rights of self-determination, personal autonomy, bodily integrity, and medical freedom.

107.    "No person shall . . . be deprived of life, liberty, or property, without due process

of law." <u>U.S. Const. Amend. V</u>.

108.    As such, Plaintiff has a fundamental liberty interest under the Due Process Clause

in refusing unwanted medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S.

261, 278, <u>110 S. Ct. 2831</u>, <u>111 L.Ed.2d 224</u> (1990); see also <u>21 U.S.C. § 360bbb-3</u> et seq.

109.    The ability to decide whether to accept or refuse medical treatment is a

fundamental right. As mandated medical treatments are a substantial burden, Defendant

must satisfy strict scrutiny and prove that the mandate is narrowly tailored to meet a

compelling interest.

110.    Tyson's vaccine mandate requires Plaintiff to disclose personal health information

and undergo a medical procedure that is experimental, potentially dangerous, and that he

does not want. This is a violation of his liberty and privacy rights under the 5th

amendment.

111.    The medical procedure, taking the vaccine, will permanently alter Plaintiff's body

and cannot be undone.

112.    Receiving the vaccine carries substantial risks, both known and unknown, to

Plaintiff's health, with irreparable and irreversible harm.

113.    Plaintiff has a constitutionally protected liberty and privacy rights to exercise

sovereignty over their own bodies, central to their personal dignity and autonomy, and to

decline undesirable medical procedures.

114.    The individual right to decline the vaccine outweighs the government interests

because:



a. all available COVID-19 vaccines are experimental. The short- and long-term negative effects of the medical product have yet to be fully determined.

b. The long-term effectiveness of COVID-19 vaccines is poor and scientific studies demonstrate substantially waning efficacy at preventing transmission of SARS-CoV-2 mere months after receiving the vaccine.

c. The clinical trials upon which the authorizations of the COVID-19 vaccines were based were inadequate and fraudulent.

d. As an mRNA gene therapy, the Pfizer and Moderna vaccines have the potential to permanently alter recipients' genetic makeup.

e. The benefit-risk ratio does not justify mandating the vaccine for all employees.

f. Plaintiff has every right and reasonable desire to prevent the injection of an untested, unsafe substance into their bodies.

## SIXTH CAUSE OF ACTION
### [Violation of the Religious Freedom Restoration Act; 42 U.S.C. § 2000bbb, et seq.]

115.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

116.     The Religious Freedom Restoration Act of 1993 ("RFRA") prohibits the "Government [from] substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

117.     "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).

118.     Plaintiff has demonstrated a sincere religious belief as grounds for their opposition to receiving a COVID-19 vaccine in compliance with Defendant's mandate.

The use of aborted fetal cells in the production of these vaccines understandably violates the conscience.

119.     Defendant, acting as a federal officer and on the government's behalf when it implemented its company-wide COVID-19 vaccine mandate, is subject to the limitations imposed by RFRA as a government actor.

120.     Defendant has imposed a substantial burden on Plaintiff's exercise of religion by only offering unpaid leave as an accommodation. Plaintiff is effectively terminated based on his religious exemption status.

121.      This burden imposed on Plaintiff's exercise of religion by Defendant's mandate is substantial. Defendant has sabotaged Plaintiff's livelihood, threatened his career prospects, inflicted untold stress and emotional suffering, and damaged his reputation based on their religious beliefs.

122.     The only interest furthered by this mandate is to reduce the transmission of SARS-CoV-2 and any resulting injury or death. Vaccination provides little to no benefit to achieve this goal.

123.     Defendant's vaccination policy is certainly not the least restrictive means of furthering that interest. Defendant does not provide less invasive alternative measures, such as testing schedules, mask requirements, social distancing, or quarantines, which Defendant has been implementing successfully since March 2020. Nor does Defendant recognize natural immunity, which is stronger and longer-lasting than vaccine-induced immunity. Rather, Tyson has opted for the most restrictive ultimatum: take a dangerous and conscience-violating medical product or lose your livelihood.



124.    RFRA prohibits Tyson's mandate and demands that such a discriminatory and violative policy be enjoined.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully pray for the following relief:

a.  A finding that Defendant violated the Constitutional rights of Plaintiff.

b.  A finding that Defendant Tyson discriminated against Plaintiff in violation of Title VII, the ADA, the Kentucky Civil Rights Act, and RFRA;

c.  Enjoin Defendant from taking adverse employment action against Plaintiff;

d.  An order that Plaintiff be compensated, to the extent allowable under Kentucky and federal law, for his monetary damages;

e.  An order that Defendant pay Plaintiff's costs associated with bringing this lawsuit, including their reasonable attorneys' fees and costs; and

f.  A grant any such further relief as the Court deems necessary and proper in the public interest.


Dated: June 3, 2022

Respectfully submitted,

/s/ Taylor J. Ferguson
Taylor J. Ferguson, Atty No. 97655
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware St.
Indianapolis, Indiana 46204
Office:        (317) 991-4765
Facsimile:    (812) 424-1005
Email:  tferguson@bdlegal.com
*Counsel for Plaintiff*

/s/ Robert E. Barnes
Robert E. Barnes, Esq.
*Seeking Admission Pro Hac Vice*
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Email: robertbarnes@barneslawllp.com
*Counsel for Plaintiff*



# Exhibit 1



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Louisville Area Office**
600 Dr. Martin Luther King, Jr Place ,Suite 268
Louisville ,Kentucky ,40202
(502) 694-3940
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/07/2022

**To:** Frankie D. Collins
522 Ky Hwy 829
ALBANY, KY 42602

Charge No: 474-2022-00027

EEOC Representative and email:    Marcus Sanders
Federal Investigator
marcus.sanders@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 474-2022-00027.

Filed          22-CI-00056          06/03/2022          Jake Staton, Clinton Circuit Clerk

# Exhibit 2



# Reasonable Religious Accommodation Request Form

## (To be completed by Team Member)

Date  8-17-2021

Name  Frankie Collins          Position/Dept  Maintenance

Supervisor  Jimmy Cook          Shift  1st

Please specify the religious belief/practice you have for which you are requesting accommodation. (See attached)

As a practicing Christian taking the vaccine goes against my religious beliefs for multiple reasons. The first reason is the vaccine was developed from aborted fetal tissue. My second reason has to do with free will! The bible says man has free will. We have the right to decide what vaccinations that we take.

What reasonable accommodation are you requesting at this time?

I am requesting that my religious beliefs not subject me to discrimination. I am requesting that I not be made to take the COVID vaccine without my job being in jeopardy. I am requesting to not be subjected to testing unless I am symptomatic.

What are some other accommodation options?

I will wear a mask and continue to practice social distancing when + where required.

Is this accommodation request a onetime occurrence  No  (dates requested) or ongoing?  Ongoing  (how long/how often; ie-every Sunday)

Are you willing to transfer to another position or department if we are unable to provide a reasonable accommodation in your current position?

Yes.

See attached *

# Exhibit 3



To Whom it May Concern:

Under Title VII of the Civil Rights Act of 1964, individuals have the right to be free from discrimination on the basis of religion. As part of their religious beliefs, many individuals object to vaccines. Employers are required to accommodate religious observances and practices, unless doing so imposes an undue hardship on business.

As a practicing Christian taking the vaccine goes against my religious beliefs for multiple reasons. The first reason is the vaccine was developed from aborted fetal tissue. It is well known that many born again Christians and Catholics are against abortion.

The Bible states:

Exodus 20:13 "You shall not murder."

Psalm 139:13-16 "13 For you created my inmost being; you knit me together in my mothers womb. 14 I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. 15 My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. 16 Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be"

Jeremiah 1:5 "Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations."

Proverbs 6:16-17 "16 There are six things the Lord hates, seven that are detestable to him: 17 haughty eyes, a lying tongue, hands that shed innocent blood"

Job 31:15 "15 Did not he who made me in the womb make them? Did not the same one form us both within our mother?"

I believe in the Bible and that God forms babies in the womb. God has a plan and a purpose for their lives. Aborting a baby in the womb is murder. It is taking away another humans life and is a sin. Taking the vaccine which is created from tests on aborted fetal tissue goes against my religion as it is the product of abortion which is sin.

In addition, my second reason has to do with free will. The Bible says that man has free will. We have the right to decide what medication and vaccinations that we can take.

The Bible says:

Genesis 1:26 "And God said, Let us make man in our image, after our likeness; and let them have dominion over the fish of the sea, and over the fowl of the air, and over the cattle, and over all the earth, and over every creeping thing that creepeth upon the earth."

Genesis 3:22 "And the Lord God said, "Now that man has become like one of us, knowing good and bad, what if he should stretch out his hand and take also from the tree of life and eat and live forever!"

THese verses explain that humans are made in the image of God and are given the same mental capacities as our Creator. Therefore, I am granted free will to think for myself and make my own decisions in this world. In Genesis 3;22 It is explaining how I have the consciousness to choose what is good and bad. With MY conscious mind, I have the right to exercise my free will that was granted to me by God.

That being said, I am using my free will to reject the vaccine. I have numerous concerns about the vaccine. One important concern is that there is no research on the long term effects of the vaccine. I have met many people who have gotten sick with Covid after taking the vaccine which makes me doubt its effectiveness.

I have faith in the body that God gave me to fight Covid. In fact my body has fought and recovered Covid once before. I do not take the flu shot either. In addition Covid has a 99% survival rate. I believe that taking the vaccine would be an expression of my lack of faith in my God given immune system.

The above is an explanation of my personal religious beliefs. I hope I have described them sufficiently. Again, these thoughts are the unique message I receive from MY God. I don't ask that you,or, anyone else agree with these thoughts and personal translations. But, under law, I respectfully request that they be honored as truthful and legally permissible. Based on what I have shared, I ask that this request for religious exemption be approved.

Thank you sincerely for taking the time to read this letter and request.

Frankie Collins

8-16-21

Case 1:22-cv-00070-GNS Document 1-1 Filed 06/23/22 Page 36 of 36 PageID #: 43

| AOC-104 Doc. Code: CCCS<br>Rev. 9-21<br>Page 1 of 1<br><br>Commonwealth of Kentucky<br>Court of Justice    www.kycourts.gov |  | Case No.: _____<br>Court: Clinton County Circuit<br>County: Clinton<br>Division: _____ |
|---|---|---|

### CIVIL CASE COVER SHEET

**PLAINTIFF/PETITIONER** *OR* **IN RE/IN THE INTEREST OF:**
FRANKIE COLLINS

**DEFENDANT/RESPONDENT,** *if applicable:*
TYSON FOODS

☐ Check here if **YOU DO NOT HAVE AN ATTORNEY** and are **REPRESENTING YOURSELF**
(a Self-Represented *[Pro Se]* Litigant)

**Nature of the Case:**  Place a "X" to the left of the *ONE* case category that most accurately describes your *PRIMARY CASE*.  If you are making more than one type of claim, check the one that you consider most important.

**DOMESTIC RELATIONS**
☐ Dissolution/Divorce with Children (DISSOC)
☐ Dissolution/Divorce without Children (DISSO)
☐ Paternity (PA)
☐ Custody (CUSTO)
☐ Child Support IV-D (SUPIV)
☐ Child Support Private Non IV-D (SUPPRI)
☐ URESA/UIFSA (UR)
☐ Visitation/Parenting Time (VISIT)
☐ Voluntary Termination of Parental Rights (VTPR)
☐ Involuntary Termination of Parental Rights (ITPR)
☐ Adoption (ADPT)
☐ Other: (DFOTH) _____

**PROBATE / ESTATE**
☐ Guardianship-Adult (GCADLT)
☐ Guardianship-Juvenile (GCJUV)
☐ Adult Conservatorship - Trusteeship (CONSVA)
☐ Juvenile Conservatorship - Trusteeship (CONSVJ)
☐ Probate-Testate (with a will) (PBTEST)
☐ Probate-Intestate (without a will) (PBINT)
☐ Petition to Dispense with Administration (PBDIS)
☐ Name Change (NC)
☐ Will Contest (WC)
☐ Other: (PBOTH) _____

**TORT (Injury)**
☐ Automobile (AUTO)
☐ Intentional (INTENT)
☐ Malpractice-Medical (MDML)
☐ Malpractice-Other (MLOTH)
_____
☐ Premises Liability (PREM)
☐ Product Liability (PROD)
☐ Property Damage (PD)
☐ Slander/Libel/Defamation (SLAND)
☐ Other: (PIOTH) _____

**REAL PROPERTY**
☐ Abandoned and Blighted Property Conservatorship (PC)
☐ Property Rights (PR)
☐ Condemnation (DOMAIN)
☐ Forcible Detainer - Eviction (FD)
☐ Forcible Entry (FENTRY)
☐ Foreclosure (FCL)
☐ Other: (COOTH) _____

**EMPLOYMENT**
☐ Employment-Discrimination (DSCR)
☒ Employment-Other (DISPU)

**CONSUMER**
☐ Seller Consumer Goods (DEBTG)
☐ Seller Consumer Services (DEBTS)
☐ Buyer Consumer Goods (BUYERG)
☐ Buyer Consumer Services (BUYERS)
☐ Credit Card Debt (CREDIT)
☐ Fraud (FRAUD)
☐ Other: (COOTH) _____

**APPEALS**
☐ Appeal from Administrative Agency (AB)
☐ Appeal from District Court (XI)
☐ Other: (OTH) _____

**MISC CIVIL**
☐ Constitutional Challenge (CCHAL)
☐ Habeas Corpus (HABEAS)
☐ Non-Domestic Relations Restraining Order (IP)
☐ Tax (TAX)
☐ Writs (WRITS)
☐ Other: (OTH) _____

**BUSINESS / COMMERCIAL**
☐ Business Tort (BCPI)
☐ Statutory Action (BCSA)
☐ Business Contract Dispute (BCCO)
☐ Other: (BCOTH) _____