UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00076-GNS

FRANKIE COLLINS                                                                                          PLAINTIFF

v.

TYSON FOODS, INC.                                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 8) and for Leave to Exceed the Page Limitation (DN 18). The motions are ripe for adjudication. For the reasons below, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion for Leave to Exceed the Page Limitation is **GRANTED**.

### I.   STATEMENT OF FACTS

Around August 3, 2021, Defendant Tyson Foods, Inc. ("Tyson") announced that its employees would be required to become fully vaccinated against COVID-19 by November 1, 2021. (Compl. ¶ 23, DN 1-1). Employees could request a medical or religious accommodation, and, if granted, they would be placed on unpaid leave for a year. (Compl. ¶ 26). If employees failed to become fully vaccinated within the one-year period, they were terminated; if employees received vaccinations, they could potentially return to work, but their original position was not guaranteed. (Compl. ¶¶ 26-27).

Plaintiff Frankie Collins ("Collins") was employed by Tyson at a facility in Albany, Kentucky. (Compl. ¶ 41). Collins requested a religious accommodation, voicing his concerns

about vaccine research and production using cell lines ultimately derived from aborted fetal tissue and the lack of research on the long-term effects of the vaccine, in addition to asserting that his immune system was naturally sufficient. (Compl. ¶¶ 43, 52-53, 57-58; Compl. Ex. 3, DN 1-1). Tyson granted the request, and Collins was placed on unpaid leave. (Compl. ¶¶ 44-45).

Collins initiated this action in Clinton (Kentucky) Circuit Court against Tyson, alleging religious discrimination under the Kentucky Civil Rights Act ("KCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), disability discrimination under the KCRA and the Americans with Disabilities Act ("ADA"), and violations of the Fourth and Fifth Amendments and the Religious Freedom Restoration Act ("RFRA"). (Compl. ¶¶ 59-124). Tyson removed the action to this Court and now moves to dismiss it. (Notice Removal, DN 1; Def.'s Mot. Dismiss, DN 8).[1]

## II.   JURISDICTION

The Court has subject-matter jurisdiction based upon federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a). Supplemental jurisdiction exists over the state law claims. Venue is proper in the Western District of Kentucky as the events occurred in Clinton County, Kentucky. *See* 28 U.S.C. § 1391(b).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[A] district court must

---

[1] Tyson also moves for leave to exceed the page limit in his reply. (Def.'s Mot. Leave, DN 18 (citing LR 7.1)). Collins has not contested the motion, so it is granted.

(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true," but it is not required to "accept a 'bare assertion of legal conclusions.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted). A pleading offering only labels, formulaic recitations of a claim's elements, or generalized assertions without factual support does not meet this burden. *Ashcroft*, 556 U.S. at 678. Facts "'merely consistent with' a defendant's liability" or that "do not permit the court to infer more than the mere possibility of misconduct" are inadequate, as it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678-79 (citations omitted).

Courts generally cannot consider documents outside the pleadings without converting a motion to dismiss under Fed. R. Civ. P. 12 into one for summary judgment under Fed. R. Civ. P. 56, but public records and exhibits to the pleadings and motion may be considered "so long as they are referred to in the complaint and are central to the claims . . . ." *Stein v. hhgregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)); *see* Fed. R. Civ. P. 12(d). The parties provided several exhibits, such as filings from other actions, Collins' Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC"), Tyson's letter to the Kentucky Attorney General, an executive order issued by President Trump, and federal guidance documents. (Def.'s Mot. Dismiss Exs. A-J, DN 8-2 to -11; Pl.'s Resp. Def.'s Mot. Dismiss Ex. A, DN 13-1). These documents may be considered, as most are public records or were posted on government websites. *See Godboldo v. Cnty. of Wayne*, 686 F. App'x 335, 340-41 (6th Cir. 2017); *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites."); *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 24 n.6

3

(D.D.C. 2018) ("The Court may take judicial notice of Executive Branch statements and reports . . . ." (citation omitted)). Collins' Charge is referred to in the Complaint and is central to his claims.[2] (Compl. ¶ 51; Compl. Ex. 1, DN 1-1 (providing Collins the right to sue Tyson)).

### IV. DISCUSSION

#### A. State Actor (Counts Five and Six)

Collins alleges Tyson violated the RFRA and his constitutional rights with its vaccine mandate. (Compl. ¶¶ 104-124). These claims are predicated upon Tyson being a government actor; Collins asserts that Tyson "attested that it was acting as a federal officer at the behest of the federal government in its implementation of its vaccination mandate" and acted "as a federal officer and on the government's behalf" when implementing the mandate. (Compl. ¶¶ 28, 119).[3]

Sixth Circuit courts have found Tyson and other private companies were not state actors when establishing COVID-19 vaccine mandates. *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 2023 U.S. App. LEXIS 6007, at *4-18 (6th Cir. 2023) (holding that Smucker's, a federal contractor, was not a state actor by complying with federal law); *Reed*, 2022 U.S. Dist. LEXIS 105911, at *3-18; *Johnson v. Tyson Foods, Inc.*, No. 21-cv-01161-STA-jay, 2022 U.S. Dist. LEXIS 106709, at *9-15 (W.D. Tenn. June 15, 2022). The courts utilized three state actor tests—public function, state compulsion, and nexus tests—and found that the plaintiffs failed to sufficiently show the vaccine mandate amounted to state action.[4] *Ciraci*, 2023 U.S. App. LEXIS 6007, at *4-13; *Reed*, 2022

---

[2] The Court takes judicial notice of Tyson's letter to Kentucky's Attorney General as to its existence, not any factual claims within. Fed. R. Evid. 201(b).

[3] Collins argues Tyson is a state actor by citing *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155-STA-jay, 2022 U.S. Dist. LEXIS 105911 (W.D. Tenn. June 14, 2022) to show Tyson purported itself to be a state actor. In *Reed*, however, the court ruled that though Tyson argued it was acting under a federal officer for purposes of removal, Tyson itself was not a state actor. *Id.* at *2-4.

[4] A fourth test—entwinement—may be considered to see if the actor "is 'entwined with governmental policies' or that the government is 'entwined in [the private entity's] management or control.'" *Marie v. Am. Red Cross*, 771 F.3d 344, 362 n.6, 363 (6th Cir. 2014) (alteration in

U.S. Dist. LEXIS 105911, at *10 (noting that failure to satisfy one test means the private party is not a government actor). Consequently, the claims requiring state action were dismissed. *Ciraci*, 2023 U.S. App. LEXIS 6007, at *1-4; *Reed*, 2022 U.S. Dist. LEXIS 105911, at *15; *accord Johnson*, 2022 U.S. Dist. LEXIS 106709, at *9-15.

Under the public functions test, a private actor "is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state," with the test being "interpreted narrowly to cover only functions like holding elections, exercising eminent domain, and operating a company-owned town." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003); *Blackwell v. Allen*, No. 22-1300, 2022 U.S. App. LEXIS 35494, at *9 (6th Cir. Dec. 21, 2022) (citation omitted); *cf. Reed*, 2022 U.S. Dist. LEXIS 105911, at *10-11 ("This test . . . has rarely been used to find state action on the part of a private actor." (citation omitted)); *Johnson*, 2022 U.S. Dist. LEXIS 106709, at *10 (same). Collins does not allege sufficient facts to show Tyson was performing a traditional government function. To the extent that he argues that Tyson exercised a public function by "guaranteeing an adequate food supply during the government declared COVID-19 pandemic," this is inadequate under the narrow test as "the Court cannot find that meat and poultry processing is an activity usually reserved for the government." *Johnson*, 2022 U.S. Dist. LEXIS 106709, at *11 (internal quotation marks omitted); *accord Reed*, 2022 U.S. Dist. LEXIS 105911, at *11.

The state compulsion test constitutes whether the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.

---

original) (citation omitted). Recently, the Sixth Circuit used three tests and analyzed entwinement through the nexus test. *Lindke v. Freed*, 37 F.4th 1199, 1202-03 (6th Cir. 2022); *cf. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982) (questioning if "these [] tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry . . . ." (citation omitted)).

1992) (citations omitted); *accord Blackwell*, 2022 U.S. App. LEXIS 35494, at *10.  This test requires more than "[m]ere approval or acquiescence" of the state of the private actor's actions or decisions, and "a business [being] subject to state regulation does not by itself convert its action into that of the State. . . ." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citations omitted); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (citation omitted).  Though Tyson's vaccine policy could have been influenced by then-President Trump's Executive Order 13917—directing meat and poultry processing plants to stay open and maintain operations during the pandemic—Collins fails to allege sufficient facts to indicate how this directive coerced Tyson into implementing its vaccine requirement.  *Reed*, 2022 U.S. Dist. LEXIS 105911, at *11 ("[P]rivate companies often implement vaccination policies for their employees."); *Johnson*, 2022 U.S. Dist. LEXIS 106709, at *11 (same); *see* Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19, 85 Fed. Reg. 26,313 (Apr. 28, 2020).

The nexus test requires "a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834 (citation omitted).  The private actor's performance must either be "subject to the government's 'management or control' or 'entwined with governmental policies,'" and the ties must be so substantial that "the state is intimately involved in the challenged private conduct . . . ." *Blackwell*, 2022 U.S. App. LEXIS 35494, at *11 (citation omitted); *Wolotsky*, 960 F.2d at 1335 (citation omitted); *Lindke*, 37 F.4th at 1203.  Collins argues Tyson's vaccine mandate satisfies the nexus test "[b]y providing critical infrastructure to guarantee national food supply at the direction of executive order, the CDC and OSHA . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 20-21, DN 13 [hereinafter Pl.'s Resp.]).  Again, Executive Order 13917 may have impacted the

6

decision to implement a vaccine mandate, but near-identical arguments were rejected as insufficient in *Reed* and *Johnson*. *See Reed*, 2022 U.S. Dist. LEXIS 105911, at *14-15; *Johnson*, 2022 U.S. Dist. LEXIS 106709, at *14. "[I]t is now well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (citations omitted); *accord Jackson*, 419 U.S. at 350. Collins fails to plead adequate facts to satisfy this standard.

As Collins has failed to show under any of these tests that Tyson is a state actor, his claims under the RFRA and the United States Constitution are dismissed.[5]

### B.  Failure to Exhaust (Count Four)

Collins alleges Tyson discriminated against him based upon his disability in violation of the ADA. (Compl. ¶¶ 98-103). Collins argues that he is an individual who is regarded as having an impairment because through its vaccine mandate "Tyson regarded unvaccinated individuals as being 'disabled' and unable to perform their duties" and perpetuated its discrimination "by threatening termination if [unvaccinated employees] failed to receive the COVID-19 vaccine." (Compl. ¶ 102). Tyson contends Collins failed to exhaust his administrative remedies as he raised only alleged religious discrimination in his Charge to the EEOC.

Filing a charge of discrimination is a prerequisite to filing a civil action under the ADA. 42 U.S.C. § 2000e-5(e)-(f); 42 U.S.C. § 12117(a) (applying procedures form Section 2000e-5 to ADA claims); *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) ("The Title VII

---

[5] Collins claims that Tyson cannot benefit from its federal preemption argument without being considered a federal actor and that Tyson's action satisfied the necessary legal analyses to become a state actor. (Pl.'s Resp. 2, 17-22). Collins does not on elaborate this argument nor provide case law to support his position. This perfunctory nature of this contention constitutes waiver of the argument. *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016).

plaintiff satisfies the prerequisites to a federal action (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue." (citations omitted)); *see also Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) ("The exhaustion of administrative remedies is a condition precedent to a Title VII or ADA action." (citations omitted)); *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). "The purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law." *Davis*, 157 F.3d at 463 (citation omitted).

Even after an action has been initiated, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (internal quotation marks omitted) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). Under the expected scope of investigation test, "[t]he Court must look to the facts alleged on the EEOC charge, rather than to the possible results of an EEOC investigation" to determine if the EEOC charge would "serve[] to put employers on notice and give[] the EEOC the opportunity to investigate or settle the dispute." *Hogan v. Int'l Paper Co.*, No. 2:18-cv-2076-JPM-tmp, 2019 U.S. Dist. LEXIS 236117, at *8, *10 (W.D. Tenn. June 3, 2019) (internal quotation marks omitted) (quoting *Wilson v. K.T.G. (USA), Inc.*, No. 16-cv-02508-TMP, 2018 U.S. Dist. LEXIS 163715, at *25 (W.D. Tenn. Sept. 24, 2018)) (citing *Bray v. Palm Beach Co.*, 907 F.2d 150 (6th Cir. 1990) (unpublished table decision)). The inquiry turns on whether the alleged facts in the Charge of Discrimination would reasonably lead the EEOC to investigate the alleged claim, not whether the facts would lead to an ancillary, unrelated investigation. *Dixon*, 392 F.3d at 217-18.

The facts alleged by Collins in his EEOC Charge were insufficient to give the EEOC the opportunity to investigate his disability discrimination claim. The facts raised in his EEOC Charge only address Collins' potential religious discrimination claim under Title VII:

> I have been treated differently and unfairly against by upper management, because of my religion, by not honoring my accommodation request, by not giving me my bonus, by posting my job before I was not allowed to return to work and by being put on unpaid leave. On or about November 1, 2021, I was placed on unpaid leave. No reason was given for the different and unfair treatment. I believe I have been discriminated against because of Religion, in violation of Title VII of the Civil Rights Act of 1964 as amended.

(Def.'s Mot. Dismiss Ex. B, at 1, DN 8-3).

As Collins only addressed religious discrimination in his EEOC Charge, he has failed to exhaust his ADA claim.[6] Therefore, Collins' claim must be dismissed.

### C.  Kentucky's COVID-19 Immunity Statute (Counts One and Two)

Collins alleges claims of religious and disability discrimination under KCRA. Tyson first responds that KRS 39A.275 grants it immunity for Collins' claims. Tyson also argues Collins' KCRA claims are preempted by Executive Order 13917, the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601-695, and the Poultry Production Inspection Act ("PPIA"), 21 U.S.C. § 451. (Def.'s Mot. Dismiss 17-21). Collins disputes that KRS 39A.275 confers immunity upon Tyson and that federal preemption applies to his claims. (Pl.'s Resp. 7-17).

---

[6] Collins contends that he was proceeding *pro se* when he filed the EEOC charge, so the Court should be lenient and find his ADA claim was exhausted (Pl.'s Resp. 7). This argument is unpersuasive as Collins' cited cases only support the contention that "a plaintiff need not use the words 'accommodate' or 'disability'" to adequately request an accommodation. *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657-58 (6th Cir. 2016) (citation omitted). This does not extend to circumstances where the plaintiff plainly did not allege facts or claims to the EEOC. Further, this Court has dismissed similar claims for failure to exhaust for plaintiffs filing EEOC claims *pro se*. *See Ramirez v. Bolster & Jeffries Health Care Grp., LLC*, 277 F. Supp. 3d 889, 902-05 (W.D. Ky. 2017); *see also Oliver v. Titlemax*, 149 F. Supp. 3d 857, 863-65 (E.D. Tenn. 2016).

Kentucky's COVID-19 immunity statute states, "[a]ny essential service provider during the declared emergency of the COVID-19 pandemic shall not be liable for any COVID-19 claim." KRS 39A.275(8)(a). An essential service provider includes businesses that "produce, supply, prepare, and sell food . . . ." KRS 39A.275(9)(a)(5). A COVID-19 claim "means any claim or cause of action for an act or omission arising from COVID-19 that accrued on or after the date the emergency was declared on March 6, 2020, and until the emergency declaration is withdrawn, revoked or lapses . . . ." KRS 39A.275(1)(c). "Arising from COVID-19" is defined as:

> [A]n injury or harm that allegedly occurred on or after the emergency was declared . . . caused by or resulting from:
>
> 1. The actual, alleged, or possible exposure to, transmission of, or contraction of COVID-19;
> 2. Services, treatment or *other action performed to limit or prevent the spread of COVID-19*; or
> 3. Services performed by an entity outside the normal course of its business in response to COVID-19 . . . .

KRS 39A.275(1)(a) (emphasis added).

Collins' KCRA claims are expressly covered by the Kentucky immunity statute as the claims arose from Tyson's vaccine mandate; Tyson is clearly an essential service provider as defined by the Kentucky legislature; and the vaccine mandate addressed the limitation or prevented the spread of COVID-19. The statute does provide an exception for "gross negligence, or wanton, willful, malicious, or intentional misconduct," by the essential service provider. Collins, however, does not adequately allege facts plausibly establishing that Tyson's actions constituted misconduct as defined, other than conclusory allegations. (Pl.'s Resp. 8-9). KRS 39A.275(8)(b). Collins' claims will therefore be dismissed.[7]

---

[7] As the Court finds Tyson is immune from Collins' KCRA claims, the Court will not consider the federal preemption argument. *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019)

### D. Title VII (Count Three)

Finally, Collins alleges Tyson discriminated against him based upon his religion in violation of Title VII. (Compl. ¶¶ 86-97). Tyson argues its offer of one-year unpaid leave to unvaccinated employees was a reasonable accommodation as it eliminated the conflict between Collins' religious beliefs and the vaccine mandate. (Def.'s Mot. Dismiss 24-25). Collins counters that Tyson "cannot claim that unprotected, unrestricted, and unpaid leave was the only potential avenue to accommodate [Collins'] exemption request, at this pleading stage . . . ." (Pl.'s Resp. 4).

Title VII prohibits employers from discriminating against their employees based upon religion. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). To establish a prima facie case for religious discrimination, a plaintiff must show "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)); *see Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 642 (E.D. Ky. 2021). Once established, the burden then shifts to the employer to show "that it offered the employee a reasonable accommodation or that doing so would cause undue hardship." *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-cv-2736 (JGK), 2023 U.S. Dist. LEXIS 27562, *9-10 (S.D.N.Y. Feb. 17, 2023) (citation omitted); *accord Slocum v. Devezin*, 948 F. Supp. 2d 661 (E.D. La. 2013).

To survive a motion to dismiss, a plaintiff need not conclusively establish each element of a prima facie showing of discrimination. *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir.

---

("[C]ourts should not address a question of preemption if they can resolve the case on other grounds.").

11

2012); *Ashcroft*, 556 U.S. at 678. "Stated differently, Plaintiff's Complaint will satisfy the Federal Rules of Civil Procedure if it 'provides an adequate factual basis' for a Title VII discrimination claim." *Grooms v. Walden Sec.*, No. 3:21-cv-00363, 2021 U.S. Dist. LEXIS 105344, at *6 (M.D. Tenn. June 3, 2021) (citations omitted). Moreover, "[t]he reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006) (citations omitted).

Collins alleges that due to his Christian beliefs, he would not receive a COVID-19 vaccination because "all COVID-19 vaccines have made use either in production or testing of fetal cell lines developed from tissues derived from aborted fetuses . . . ." (Compl. ¶¶ 52-53, 57-58). Collins informed Tyson of this conflict by requesting a religious exemption and was placed on unpaid leave. (Compl. ¶¶ 43-45). Collins claims in this action that "one year of unpaid leave is not [a] reasonable accommodation, but rather a punitive measure," which amounted to religious discrimination. (Compl. ¶¶ 89-92). Accordingly, Collins has sufficiently pled factual allegations to plausibly state a claim for religious discrimination. Therefore, Tyson's motion must be denied as to this claim.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to File Excess Pages (DN 18) is **GRANTED**.

2. Defendant's Motion to Dismiss (DN 8) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under the Kentucky Civil Rights Act (first and second causes of action), the Americans with Disabilities Act (fourth cause of action), the United States Constitution (fifth cause of action), and the Religious Freedom Restoration Act (sixth cause of action) are

**DISMISSED WITH PREJUDICE**.  Plaintiff's claim for religious discrimination in violation of Title VII shall continue.

Greg N. Stivers, Chief Judge
United States District Court

March 29, 2023

cc:     counsel of record